UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

PATRICIA TURNER ARBUCKLE,                )
                                          )
    *Plaintiff,*                        )
*v.*                                      )        No. 1:07-cv-40
                                          )        *Edgar / Carter*
CITY OF CHATTANOOGA, OFFICER              )
THOMAS BUTTRY, in his individual          )
and official capacity as the agent        )
for the City of Chattanooga, OFFICER      )
WILLIAM S. CAMPBELL, in his               )
individual and official capacity as the   )
agent for the City of Chattanooga, and    )
JOHN DOE OFFICER 1, in his                )
individual and official capacity as the   )
agent for the City of Chattanooga         )
                                          )
    *Defendants.*                      )

**MEMORANDUM**

Plaintiff Patricia Arbuckle brings this civil rights action against defendants the City of

Chattanooga (the "City"), Officer Thomas Buttry, in his individual and official capacities, and

Officer William S. Campbell, in his individual and official capacities (collectively

"Defendants"). Plaintiff admits that her action against John Doe should be dismissed. [Court

Doc. No. 52, p. 2]. The action challenges the constitutionality of a search conducted at the

Plaintiff's residence on March 13, 2006. Plaintiff brings claims for violation of her Fourth and

Fourteenth Amendment rights to the U.S. Constitution pursuant to 42 U.S.C. § 1983 ("Section

1983") and for violation of the Tennessee Constitution. Plaintiff seeks damages for the alleged

constitutional violations pursuant to 42 U.S.C. § 1988 ("Section 1988"). Plaintiff also brings

state law claims for negligence, negligence per se, assault and battery, trespass, and intentional infliction of emotional distress. Plaintiff further seeks punitive damages against the individual defendants, Buttry and Campbell. Plaintiff admits that her claims pursuant to 42 U.S.C. § 1985, 42 U.S.C. § 1981, Title VII, and for violation of the Eighth Amendment to the U.S. Constitution should be **DISMISSED**. Plaintiff further concedes that the court should **DISMISS** her claims for trespass and punitive damages against the City. [Court Doc. No. 52, pp. 1-2].

Defendants the City, Buttry and Campbell all move for summary judgment dismissal of all of the remaining claims brought by Plaintiff. [Court Doc. No. 42]. Plaintiff opposes the motion. [Court Doc. No. 52]. The motion is now ripe for this court's review.

## I.      Background

The Court finds that there are material facts in dispute. The events giving rise to this lawsuit occurred over the course of a narrow time period in the early morning hours of March 13, 2006. Around three in the morning on that day, a retired Georgia police officer, Lee Blake, followed an intoxicated driver driving a GMC pickup truck on Interstate 24 in Chattanooga, Tennessee. *See* [Court Doc. No. 1, Complaint, ¶ 14]; [Court Doc. No. 55, p. 2]; [Court Doc. Nos. 42-3 and 59, Deposition of Thomas Buttry ("Buttry Dep."), p. 45]. Mr. Blake contacted the Chattanooga Police Department and reported that he observed the driver of the pickup truck strike a mailbox and a guardrail. Complaint, ¶ 15, [Court Doc. No. 55, p. 2]. Mr. Blake followed the pickup truck to a residence located at 3622 Conner Street. Complaint, ¶ 16. He subsequently helped to direct Chattanooga Police Officers Buttry and Campbell to the residence. *Id.* at ¶ 18. *See also*, [Court Doc. Nos. 42-3 and 55, Deposition of William Campbell ("Campbell Dep."), pp. 48, 67-68]; Buttry Dep., p. 45.

Plaintiff resided on the top floor of the residence with her husband, while her adult son, Benjamin Arbuckle, resided in an apartment underneath the main floor. The lower floor apartment was not accessible from the upper portion of the house. On the night in question, Plaintiff's husband was away on business, and Plaintiff was alone in the upper portion of the residence.

Around three a.m. in the morning Plaintiff heard her doorbell ring. [Court Doc. Nos. 42-1 and 58, Deposition of Patricia Arbuckle ("Arbuckle Dep."), p. 31]. In her deposition, Plaintiff described the situation that followed:

> Somebody was hitting the door extremely hard and saying, open the door or we'll kick it in. And in Brainerd, you don't open the door in the night, after it's dark. I wouldn't. And I didn't know who they were, and there was a stained glass window. The door was half glass and half wood. . . . And when they kept saying they would kick the door in, I walked back to the kitchen counter, basically turned around, because it's only a few steps to the counter, and picked up the phone and dialed 911, and then I heard them say they were Chattanooga City Police. And I said, can you show me some identification. And they said, open the door or we'll kick it in. And at this time I saw a gun and a hand, because there is a light on the front porch that – we have motion detections on the corners of the house, and the light was shining, I assume, on the back of one of the officers holding the gun. And all I could see was a gun and a hand. And one of the officers showed me a badge and said, here's the badge, so I assumed that they were the city police.

Arbuckle Dep., pp. 31-32. Plaintiff contends that the officers did not immediately identify themselves, but merely exhorted her to open the door or they would kick it in. *Id.* at 35. Eventually one of the officers displayed an identification badge against Plaintiff's front door so hard that it cracked a stained glass section of the door. *Id.* at 47.

Plaintiff testified in her deposition that the following occurred once the officers identified themselves:

> When they showed me their badge, I said, I'm opening the door. I'm alone. I

> have no weapons. I'm opening the door. I wanted them to know. They were
> yelling at me. I'm yelling at them. And when I opened the door, the alarm went
> off in the house, and I believe Officer Campbell was the first one in the door. And
> I said – I had my hands in the air, and I said, I am going to the kitchen to turn the
> alarm off. I went in the kitchen, turned the alarm off and turned around and
> looked at him. . . . Both of them had their guns drawn on me.

Arbuckle Dep., pp. 47-48. Plaintiff is adamant that "[t]hey neither one asked permission to enter,
and they neither one told me why they were entering." *Id.* at 50. After they entered the house the
officers informed Plaintiff that they were not seeking her husband, but were interested in
speaking to her son. *Id.* While Plaintiff turned off her home alarm in the kitchen, the officers
continued to point their weapons at her. *Id.* at 55. She alleges that Officer Campbell questioned
her while Officer Buttry searched her home. *Id.*

In her deposition, Plaintiff testified that after she turned off her home alarm, the following
events transpired:

> At that point, I said – he said to me, where is he, where is he. And I said, there's
> no one here, I'm home alone. I said, I want to cooperate, tell me what you want.
> He said, I want to know where he is. I said, I'm here alone. He said, you're a liar,
> you're hiding him. . . . I was standing with my arms up. He has a gun pointed at
> me. I thought I was dying, to be honest with you. If he had shot me, I wouldn't
> have been surprised. That's how terrorized I felt.
> He said to me, I want him. And Officer Buttry comes back down the hall
> with his gun still out of his holster, in his hand, and said, she's telling you the
> truth, no one is here.
> Then Officer Campbell says to me, where is he? And I said he's in North
> Carolina, he's at a car convention. And he says, I don't want your husband, I want
> your son. I said, which one? He said, the one that drives the red truck. And I
> said, if he's home, he gets off after 2:00, he'll be downstairs. I will take you to
> him. And I began at that point saying, please put your guns up. You're scaring
> me. I was terrorized. I have never been so afraid in my life. . . .

Arbuckle Dep., pp. 56-57. Plaintiff alleges that Officer Buttry did not ask permission to search
her home, but walked down the hallway to her bedroom and her guest bedroom. *Id.* at 69. She

does not know exactly where he searched because Officer Campbell was holding her at gunpoint in the kitchen and questioning her. *Id.*

Plaintiff then escorted the officers through her home and down some stairs to the front entrance of her son's apartment at the back of the bottom floor of her residence. Arbuckle Dep., p. 57. At that point three more officers joined the Plaintiff and Officers Campbell and Buttry. *Id.* at 58, 60. Plaintiff estimated in her deposition that she was alone with Officers Campbell and Buttry in her home for about five minutes. *Id.* at 65.

Plaintiff pounded loudly on her son's door and started screaming at him that the police were there. Arbuckle Dep., p. 65. Benjamin Arbuckle came to the door, and Officer Campbell grabbed him by the arm, led him out of the house, and told him to place his hands on his pickup truck. Campbell Dep., p. 71. Officer Campbell then began patting Mr. Arbuckle down. *Id.* Plaintiff suggested that he ask for an attorney, and Mr. Arbuckle did so. *Id.* Mr. Arbuckle declined to take a sobriety test during the incident, based on the advice of Plaintiff. *See id.* at 72. Following his refusal to take a sobriety test, the police officers placed handcuffs on him. Arbuckle Dep., p. 68; Campbell Dep., p. 73.

The officers entered Mr. Arbuckle's apartment seeking his driver's license after he indicated that it was inside on the kitchen counter. *See* Campbell Dep., p. 73; Arbuckle Dep., p. 68. Plaintiff followed the officers into her son's apartment and asked them to leave. Arbuckle Dep., p. 68. They left after finding the driver's license they were seeking. *Id.* The police officers arrested Mr. Arbuckle and placed him in a police vehicle. Plaintiff asked where the officers were taking Mr. Arbuckle, and Officer Campbell responded that they were taking him to the Hamilton County Jail. Campbell Dep., p. 73.

With respect to whether the officers physically harmed her, Plaintiff testified in her deposition that she "made contact with Officer Campbell, but he didn't know I was . . . I don't think he intentionally pushed me."  Arbuckle Dep., p. 70.  She notes that since the incident she has suffered from insomnia and high blood pressure.  *Id.* at 76.  She has also sought counseling from her pastor for emotional trauma.  *Id.* at 84.

Officer Buttry's and Officer Campbell's versions of the events in question differ from Plaintiff's version.  Officer Buttry testified in his deposition that he and Officer Campbell identified themselves as Chattanooga Police Officers several times and that he believed Plaintiff did not wish to open the door.  Buttry Dep., p. 48.  He asserts that he did not draw his firearm on Plaintiff at any point, but admits that Officer Campbell did at one point.  *Id.* at 56.  He further testified that their conversation with Plaintiff occurred only in the doorway of her home and that they did not enter the residence.  *Id.* at 58.  Officer Buttry alleges that Plaintiff agreed to show them where Mr. Arbuckle's apartment was and that "[s]he turned around and walked us straight through her house, into the kitchen and out the sliding glass door to the deck, down the stairs to the back entrances to the door to the entrance to the apartment."  *Id.* at 59.  He asserts that he did not search Plaintiff's home.  *Id.*

During his deposition, Officer Campbell indicated that he had received training regarding Fourth Amendment rights and noted that "I remember them telling us that in order to search a house, you need consent, exigent circumstances and obviously a search warrant."  Campbell Dep., p. 14.  He further indicated that "quite a few attorneys" would speak at such trainings.  *Id.* Regarding the existence of exigent circumstances he testified that "you have exigent circumstances to follow a suspect if he's committed a crime and you see him running into the

house, you know, probable cause to believe that he's committed such crime." *Id.* He acknowledged that he was not "in a hot pursuit situation in this case." *Id.* at 67. Officer Buttry also testified that he understood he could enter a residence "under consent" and when there "are certain exigent circumstances" present. Buttry Dep., p. 14.

The parties dispute whether Officers Buttry and Campbell searched the top floor of Mrs. Arbuckle's residence. Officer Campbell testified in his deposition that the officers asked Mrs. Arbuckle "if she could show us where her son resided and how we could access that and talk to him. And she led us through the house and consented to show us." Campbell Dep., p. 72.

Officer Campbell further acknowledged that his superiors at the police department provided a motivational speech to the police force in 2004 that assured officers that "if you work hard and you make an honest mistake, an honest mistake, we'll work with you. We're not out here to leave you high and dry." Campbell Dep., pp. 28-30. He understood his superiors to be telling him to "go out there and do [his] job and work hard and that, you know, don't violate people's civil rights. Just do a good job and work hard." *Id.*

The record reveals that in 2005 the City terminated Officer Campbell from his position for excessive use of force and failure to write a vehicle pursuit report. *Id.* at 31-33; [Court Doc. No. 57, pp. 2-4]. The City ultimately reinstated and rehired Officer Campbell following his successful appeal of his termination. The City modified the termination to a 28-day suspension. *Id.* at 32-33. According to Officer Campbell and the City, the incident resulting in his termination was the only incident investigated by the City's Department of Internal Affairs in which Officer Campbell was found to be at fault. *Id.* at 36-37.

The City has filed several affidavits indicating its policies and procedures pertaining to

searches and seizures. Lieutenant Stan Allen manages the training division of the Chattanooga

Police Department and averred that Officer Buttry has received annual update training since 1999

when he completed the Police Academy on arrest and search warrant procedures. [Court Doc.

No. 43, Affidavit of Stan Allen ("Allen Aff."), ¶¶ 1-2]. He further confirmed that Officer

Campbell has received annual update training in arrest procedures and search warrant procedures

since completing the Police Academy in 2001. Allen Aff., ¶ 3. He also asserts:

> I am familiar with the training policies and procedures of the Chattanooga Police Department. In March of 2006, the City of Chattanooga did not have any policy, custom or practice of training its police officers to use any type of force on any person unless it was consistent with the use of force continuum provided in Chattanooga Police Department Policy, ADM-5 or the procedures requiring a search warrant provided in OPS-42.

> To my knowledge, no policymaking official of the City of Chattanooga has ever authorized or condoned any policy or custom of using excessive force, allowing unlawful searches of homes or persons, or making unlawful arrests, nor has the City of Chattanooga failed to properly train its police officers regarding use of force, search warrant procedures, and proper arrest procedures.

> The City of Chattanooga has never authorized or condoned any policy, custom or practice of allowing officers to harass or threaten property owners to illegally gain access to search any residence or home.

Allen Aff., ¶¶ 4-6. The Chief of Police for the Chattanooga Police Department, Freeman Cooper,

also asserts that "[o]n March 13, 2006, the City of Chattanooga did not have any policy, custom,

or practice of allowing its police officers to enter a residence without a warrant, consent or

exigent circumstances to justify a warrantless entry." [Court Doc. No. 44, Affidavit of Chief

Freeman Cooper ("Cooper Aff."), ¶ 3]. *See also*, [Court Doc. No. 45, Affidavit of Lon Eilders

("Eilders Aff."), ¶ 3].

Defendants attach copies of the Chattanooga Police Department's policies pertaining to

making arrests. [Court Doc. No. 44-2]. The policy pertaining to entry into a dwelling to make an arrest states:

> Police officers may enter a suspect's home to make an arrest if they have a valid arrest warrant or there are exigent circumstances excusing the necessity of obtaining a warrant. However, the Fourth Amendment requires that police officers obtain a search warrant to execute an arrest warrant in the home of a third person or an area of a building not open to the public unless consent to enter is obtained or exigent circumstances exist which necessitate the entry. The U.S. Supreme Court has held that, absent consent or exigent circumstances, law enforcement officers cannot seek the subject of an arrest warrant in the home of a third person without first obtaining a search warrant. Without a warrant, an officer may not forcibly enter a dwelling to effect the arrest in the absence of exigent circumstances that justify the entry.

*Id.* at p. 5.

Plaintiff asserts that both Officers Campbell and Buttry had been investigated for violations of citizens' civil rights in other instances. She provides evidence of her complaint against Officers Buttry and Campbell alleging improper procedure and rudeness. [Court Doc. No. 57, p. 13]. She also provides evidence that Captain Mike Williams informed her that the police department investigated her complaint and determined it to be unfounded. *Id.* at 12. The record further reveals that both Officers Campbell and Buttry were the subjects of multiple citizen complaints, but that only one complaint against Officer Campbell was sustained. *See* [Court Doc. No. 57]. Officer Campbell was suspended for twenty-eight days for improper use of force and for failure to file a report. *Id.* at 4.

The City responds with the affidavit of Captain Mike Mathis, the Captain of the Internal Affairs for the Chattanooga Police Department. [Court Doc. No. 46, Affidavit of Captain Mike Mathis ("Mathis Aff.")]. With respect to complaints regarding the conduct of Officers Buttry and Campbell, Captain Mathis stated:

I have reviewed the records of the Internal Affairs Division concerning Officer Thomas Buttry prior to March 13, 2006 and I am aware that Officer Buttry was hired as a police officer by the Chattanooga Police Department on November 8, 1998. I am not aware of any founded or sustained Internal Affairs investigations concerning improper use of force by Officer Buttry at any time prior to March 13, 2006.

I have reviewed the records of the Internal Affairs Division concerning Officer William S. Campbell prior to March 13, 2006 and I am aware that Officer Campbell was hired as a police officer by the Chattanooga Police Department on December 15, 2000. I am aware of one (1) founded or sustained Internal Affairs investigation concerning improper use of force or improper arrest procedures by Officer Campbell prior to March 13, 2006. I am aware that an Internal Affairs investigation, Case Number 2004-71, was conducted and after a full investigation, the allegation of use of force/injury and failure to file pursuit report was sustained by the Chattanooga Police Department as to Officer Campbell and Officer Campbell received discipline from former Police Chief Steve Parks for his actions at that time.

In Case Number PPI 2006-48, I am aware an Internal Affairs investigation was conducted as to the actions of Officers Campbell and Buttry which were determined to be unfounded as to rudeness and improper search of Patricia Arbuckle.

I am aware that Officers of the Chattanooga Police Department are disciplined for inappropriate conduct which is found to violate the written policies adopted by the Chattanooga Police Department and no unconstitutional policy, custom or practice existed of allowing officers to be improperly trained, supervised, or disciplined for inappropriate activity prior to March 13, 2006 to my knowledge.

Mathis Aff., ¶¶ 6-9.

## II. Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v.*

*Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

### III.    Analysis

#### _____A.    Section 1983 Claims

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim pursuant to Section 1983, plaintiffs must demonstrate two elements: "(1) the defendants deprived [plaintiffs] of a right, privilege, or immunity secured to [them] by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law."  *Cunningham v. Sisk*, No. 1:01CV182, 2003 WL 23471541, *5 (E.D. Tenn. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000), *abrogated in part on other grounds as stated in DiLaura v. Township of Ann Arbor*, 471 F.3d 666, 671 n.2 (6th Cir. 2006))).  Only the first prong of the test is relevant in this action because the Defendants do not dispute that they were acting under color of state law.

Section 1983 "'creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.' " *Alexander v. Haymon*, 254 F.Supp.2d 820, 830 (S.D. Ohio 2003) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)).  Plaintiff alleges that the Defendants violated her Fourth and Fourteenth Amendment rights under the U.S. Constitution.  U.S. Const. amend. IV; U.S. Const. amend. XIV.

## 1.     Individual Defendants

Defendants Buttry and Campbell claim that their actions are protected by the doctrine of qualified immunity.  The doctrine of qualified immunity "shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  The U.S. Supreme Court has established a two-part test, the order of which the Court has recently relaxed, for determining whether a law enforcement officer is entitled to qualified immunity.  *See Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005) (citing *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)).  Under this test district courts must:

> consider whether 'the facts alleged show the officer's conduct violated a constitutional right.' . . . If the plaintiff can establish that a constitutional violation occurred, a court should ask 'whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition.'

*Lyons*, 417 F.3d at 571 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  The Supreme Court has recently receded from the strict formula described in *Saucier v. Katz* and determined that the *Saucier* "procedure should not be regarded as an inflexible requirement."  *See Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 812 (2009).  The Court explained that:

> [o]n reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

-13-

*Pearson*, 129 S.Ct. at 818.

A right may be defined as clearly established by looking to Supreme Court precedent, then to Sixth Circuit precedent, then to other courts within the Sixth Circuit, and finally to decisions of other circuits. *See Gardenhire*, 205 F.3d at 311. In addition, "[q]ualified immunity affords government officials an immunity from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Burden v. Carroll*, No. 03-2149, 108 F. App'x. 291, 293, 2004 WL 1826602 (6ᵗʰ Cir. Aug. 12, 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This analysis should consider the legal rules that are clearly established at the time the defendants took the alleged actions. *See Rodgers v. Jabe*, 43 F.3d 1082, 1085 (6ᵗʰ Cir. 1995) (relying on *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)).

Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense of qualified immunity. *Myers v. Potter*, 422 F.3d 347, 352 (6ᵗʰ Cir. 2005) (citing *Gardenhire*, 205 F.3d at 311). Law enforcement officials will be entitled to qualified immunity " 'when their decision was *reasonable,* even if mistaken.' " *Pray*, 49 F.3d at 1158 (quoting *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Further, " '[if] officers of reasonable competence could disagree on this issue, immunity should be recognized.' " *Pray*, 49 F.3d at 1158 (quoting *Malley v. Briggs*, 475 U.S. 335, 349, 106 S.Ct. 1092, 1100, 89 L.Ed.2d 271 (1986)).

Plaintiff alleges in her Complaint that the Defendants' search of her property violated her Fourth and Fourteenth Amendment rights. The Fourth Amendment to the United States

Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The Fourteenth Amendment makes the Fourth Amendment applicable to the states. U.S. Const. amend. XIV; *see Michigan v. Summers*, 452 U.S. 692, 694 n.2, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Where a plaintiff's claims under the Fourteenth Amendment arise out of a common nucleus of facts and pertain to an alleged wrongful search or seizure, it is appropriate to analyze such claims under the reasonableness standard of the Fourth Amendment instead of an analysis of substantive due process rights. *See e.g. Alexander v. Beale Street Blues Co.*, 108 F.Supp.2d 934, 940 (W.D. Tenn. 1999) (citing *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 595-96 (7th Cir. 1997), *cert. denied*, 522 U.S. 1116, 118 S.Ct. 1052, 140 L.Ed.2d 115 (1998)); *see also, Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *U.S. v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Thus, the court analyzes whether an unreasonable search or seizure by Officer Buttry or Officer Campbell in violation of Plaintiff's Fourth Amendment rights occurred.

a.     **Unreasonable Search**

The Plaintiff claims that the search of her residence constituted an unreasonable search under the Fourth Amendment. Whether a search or seizure is reasonable "depends on a balance between 'the need to search [or seize] against the invasion which the search [or seizure] entails.'" *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 590 (6th Cir. 1994) (quoting *Terry v. Ohio*,

392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)).  Further, a defendant may be

entitled to summary judgment when "in light of the clearly established principles governing

warrantless searches, he could, as a matter of law, reasonably have believed that the search of the

[plaintiff's] home was lawful." *Anderson*, 483 U.S. at 641.  The defendant officer's "subjective

beliefs about the search are irrelevant." *Id.*

> The United States Supreme Court has made clear that:
>
> [i]t is well settled under the Fourth and Fourteenth Amendments that a search
> conducted without a warrant issued upon probable cause is 'per se unreasonable . .
> . subject only to a few specifically established and well-delineated exceptions.'  It
> is equally well settled that one of the specifically established exceptions to the
> requirements of both a warrant and probable cause is a search that is conducted
> pursuant to consent.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (citations

and quotations omitted).  In *Schneckloth* the Supreme Court explained the definition of consent:

> We hold only that when the subject of a search is not in custody and the State
> attempts to justify a search on the basis of his consent, the Fourth and Fourteenth
> Amendments require that it demonstrate that the consent was in fact voluntarily
> given, and not the result of duress or coercion, express or implied.  Voluntariness
> is a question of fact to be determined from all the circumstances . . . .

*Id.* at 248-49.  Defendants have the burden of demonstrating consent was given freely and

voluntarily.  *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

In the instant action the parties agree that the Defendants did not have a warrant and that

exigent circumstances were not present.  Defendants Buttry and Campbell assert that Plaintiff

gave consent for them to search her residence.  Campbell Dep., p. 72; Buttry Dep., pp. 58-59.

Plaintiff presents evidence that she did not consent to a search.  Arbuckle Dep., pp. 47-55, 69.

This court must view the facts in the light most favorable to the Plaintiff.  The court thus

concludes that Plaintiff has established a genuine issue of material fact regarding whether she

consented to the search of her home, especially prior to her offer to guide the officers to her son's

apartment.  Without consent being given, Plaintiff has established the possibility of a violation of

her Fourth Amendment right in the search of her home without a warrant.

Once a constitutional violation has been supported by the evidence, the court analyzes

whether the constitutional right was "clearly established."  The Sixth Circuit recently explained:

The key determination is whether a defendant moving for summary judgment on qualified

immunity grounds was on notice that his alleged actions were unconstitutional.

> "[A]n action's unlawfulness can be apparent from the direct holdings, from
> specific examples described as prohibited, or from the general reasoning that court
> employs."  "In an obvious case, general standards can clearly establish the answer,
> even without a body of relevant case law."  "[T]here need not be a case with the
> exact same fact pattern or even 'fundamentally similar' or 'materially similar'
> facts; rather, the question is whether the defendants had 'fair warning' that their
> actions were unconstitutional."

*Grawey v. Drury*, 567 F.3d 302, 313-14 (6th Cir. 2009) (quoting *Feathers v. Aey*, 319 F.3d 843,

848 (6th Cir. 2003); *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir. 2005); *Cummings v. City of

Akron*, 418 F.3d 676, 687 (6th Cir. 2005)) (other citations omitted).  The law regarding

warrantless searches has been established for a number of years.  *See Schneckloth*, 412 U.S. at

219; *Hardesty v. Hamburg Township*, 461 F.3d 646, 651 (6th Cir. 2006).  Although their

subjective beliefs are not relevant to this inquiry, Officers Buttry and Campbell admitted in their

depositions that they understood there were only certain circumstances in which warrantless

searches of a home were constitutional.  Buttry Dep., p. 14; Campbell Dep., pp. 14, 67.  The

court concludes that Plaintiff has established a genuine issue of material fact regarding whether

an unlawful search occurred and that the right to have her home be free from warrantless

searches absent consent or exigent circumstances was clearly established in March of 2006.  The

motion for summary judgment on behalf of Officers Buttry and Campbell in their individual

capacities relating to the search of Plaintiff's residence will therefore be **DENIED**.

       b.      **Unreasonable Seizure**

Plaintiff alleges in her complaint that Defendants violated her right under the Fourth

Amendment to be free from unreasonable seizures.  To state a claim for unreasonable seizure, a

plaintiff must demonstrate that there was a seizure and that the seizure was unreasonable.

*Alexander*, 108 F.Supp.2d at 941.   It is well-settled that " 'whenever a police officer accosts an

individual and restrains his freedom to walk away, he has 'seized' that person.' " *Summers*, 452

U.S. at 696 n. 5, 101 S.Ct. 2587 (quoting *Terry*, 392 U.S. at 16); *see also Smith v. Heath*, 691

F.2d 220, 223 (6th Cir. 1982).

Handcuffing and detention of individuals through the use of weapons that deprives

individuals of their freedom of movement constitutes a seizure.  *Ingram v. City of Columbus*, 185

F.3d 579, 591 (6th Cir. 1999).  However, the inquiry does not end there.  To determine whether a

constitutional violation occurred, the court must analyze whether the seizure was unreasonable

within the meaning of the Fourth Amendment.

The Supreme Court has made clear that "not all seizures of the person must be justified

by probable cause to arrest for a crime" and "reasonable suspicion of criminal activity warrants a

temporary seizure for the purpose of questioning limited to the purpose of the stop." *Royer*, 460

U.S. at 498 (citing *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1975);

*United States v. Brignoni-Ponce*, 422 U.S. 873, 881-882, 95 S.Ct. 2574, 2580-2581, 45 L.Ed.2d

607 (1975)).  However, "an investigative detention must be temporary and last no longer than is

necessary to effectuate the purpose of the stop" and the "investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Royer*, 460 U.S. at 500; *see also Bennett v. City of Eastpointe*, 410 F.3d 810, 836 (6th Cir. 2005). Federal courts have determined that investigatory stops of thirty minutes are not unreasonable under the Fourth Amendment. *See e.g. Courson v. McMillian*, 939 F.2d 1479, 1492 (11th Cir. 1991); *see also United States v. Sharpe*, 470 U.S. 675, 687, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605 (1985).

As the Supreme Court has noted, "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams*, 407 U.S. at 145-46. The Sixth Circuit has held that "[l]aw enforcement officials have a limited authority to detain occupants of a premises while a proper search is being conducted." *United States v. Bohannon*, 225 F.3d 615, 616 (6th Cir. 2000). Several reasons for this rule exist, including the prevention of flight of a suspect and the interest in reducing the risk of harm to law enforcement officials. *Id.* (citing *Summers*, 452 U.S. at 705). However, when a "detention rises to the level of a full-fledged arrest, the Fourth Amendment demands that the seizure be supported by probable cause." *Centanni*, 15 F.3d at 590 (citing *Dunaway v. New York*, 442 U.S. 200, 212-14, 99 S.Ct. 2248, 2256-58, 60 L.Ed.2d 824 (1979)).

The Sixth Circuit has determined that defendant officers may establish that a detention, not supported by probable cause, is reasonable if "'1) [ ] the officer's conduct is supported by articulable suspicion, and 2) [ ] detention and investigative methods used were reasonable under the circumstances.' " *United States v. Heath*, 259 F.3d 522, 529 (6th Cir. 2001) (quoting *United*

*States v. Winfrey*, 915 F.2d 212, 216 (6ᵗʰ Cir. 1990)).   In assessing the second prong of the test, a

court "must then ascertain whether the detention is reasonable, that is, (1) was it sufficiently

limited in time, and (2) were the investigative means used the least intrusive means reasonably

available." *Bennett*, 410 F.3d at 825 (quoting *U.S. v. Sanders*, 719 F.2d 882, 887 (6ᵗʰ Cir. 1983)).

        The Sixth Circuit "permits the use of force, such as handcuffs and guns, to effect a stop

when such a show of force is reasonable under the circumstances of the stop." *Heath*, 259 F.3d

at 530 (citing *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6ᵗʰ Cir.

1999); *United States v. Hardnett*, 804 F.2d 353, 356-57 (6ᵗʰ Cir. 1986)).   Fear for personal safety

may justify the use of weapons to detain individuals for investigative purposes only. *Id.* at 591-

92.  The Sixth Circuit and the Supreme Court have explained that:

> When making an arrest or investigatory stop, the government has 'the right to use
> some degree of physical coercion or threat thereof to effect it.'  Law enforcement
> officers are inevitably required to make difficult, split-second decisions regarding
> the amount of force needed in a particular situation, and '[n]ot every push or
> shove, even if it may later seem unnecessary in the peace of a judge's chambers,
> violates the Fourth Amendment.'

*Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6ᵗʰ Cir. 2001) (quoting *Graham*, 490 U.S. at 394,

109 S.Ct. 1865).

        In this action Defendants Buttry and Campbell allegedly seized Plaintiff by questioning

her regarding the whereabouts of her son.  The court concludes that the parameters regarding

illegal seizures have been clearly established for some time.  However, the evidence does not

create a genuine issue of material fact regarding whether an unreasonable seizure of Plaintiff

occurred.  The facts viewed in the light most favorable to Plaintiff indicate that Officer Campbell

questioned Plaintiff while holding his weapon, but that she quickly ascertained that the

Defendants were searching for her son. She agreed to escort them to the door of her son's apartment and showed them through her home to the back door. The entire incident occurred in about five minutes.

Although the detention was not supported by probable cause and constituted a "seizure" for constitutional purposes, the officers had an articulable suspicion that Plaintiff's son, an individual observed to have been driving a vehicle while under the influence of alcohol, was residing in Plaintiff's home. The officers had no reason to understand the layout of Plaintiff's home. In addition, the officers used detention and investigative methods that were reasonable under the circumstances. They detained the Plaintiff briefly while they attempted to determine where her son might be, and although Officer Campbell had his weapon out, it is not clear that this was unreasonable under the circumstances given that the officers did not know who else might be in the home or whether the Plaintiff was armed. It did not take very long for the Defendants to determine that Plaintiff was not a threat and to leave the premises with her son. Under these circumstances the court concludes that Plaintiff has failed to create a genuine issue of material fact regarding her alleged unreasonable seizure. *Heath*, 259 F.3d at 529. The court will therefore **DISMISS** this claim.

## 2. The City Defendant

The U.S. Supreme Court has held that municipalities are included as persons within the meaning of Section 1983, and therefore plaintiffs may sue municipalities for relief under the statute. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, a municipality may not be held liable under Section 1983 under a theory of respondeat superior. *Bennett*, 410 F.3d at 818 (citing *Monell*, 436 U.S. at 691). Municipalities

are only liable under Section 1983 if they have an established policy or custom that causes the alleged injury. *See Monell*, 436 U.S. at 690.

> A municipality may be held liable only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' Furthermore, for municipal liability, there must be an 'affirmative link between the policy and the particular constitutional violation alleged.' The claimant has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue.

*Bennett*, 410 F.3d at 818-19 (quotations and citations omitted). Plaintiff must prove that her particular injuries were "incurred because of the execution of the policy or custom." *Cunningham*, 2003 WL 23471541 at *14 (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382 (1997); *Gregory*, 220 F.3d at 442; *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

This Court has noted that a custom must " 'be so permanent and well settled as to constitute a custom or usage with the force of law.' " *Cunningham*, 2003 WL 23471541 at *14 (quoting *Monell*, 436 U.S. at 691). Plaintiffs may establish a policy or custom in several ways. There may be an official policy that defendants promulgated. *Id.* Plaintiffs may also show a "pervasive custom or practice of which the [ ] lawmakers either know or reasonably should know." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Such a custom must be "so widespread and commonly accepted as to in effect have the force of law." *Cunningham*, 2003 WL 23471541 at *14 (citing *Brown*, 520 U.S. at 404; *Monell*, 436 U.S. at 690-91); *see also Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1310-11 (11th Cir. 2001); *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989) (finding policy of deliberate indifference to medical needs based on prior mistreatment of 14 other paraplegics and

failure to investigate mistreatment).  Further, "a plaintiff must demonstrate that 'through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Gregory*, 220 F.3d at 442 (quoting *Board of County Comm'rs of Bryan County*, 520 U.S. at 405, 117 S.Ct. 1382).

Plaintiffs can also establish the requisite policy or custom for purposes of Section 1983 by demonstrating that an official with policymaking authority has taken a single act relating to the subject matter or area at issue.  *Cunningham*, 2003 WL 23471541 at *14 (citing *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembauer v. City of Cinncinnati*, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

Where the evidence demonstrates that a city "adopted detailed procedures to safeguard citizens' interests during arrests and following complaints of police brutality," liability against the city on the basis of custom or policy may not be appropriate.  *See Dorsey v. City of Detroit*, 858 F.2d 338, 345 (6th Cir. 1988).  For example, in *Carter v. City of Wyoming* the district court addressed whether evidence of citizen complaints against a police department established a custom or policy of unconstitutional treatment.  No. 1:05cv529, 2007 WL 2746635, *7 (W.D. Mich. Sept. 19, 2007).  The plaintiff cited thirty-one complaints of excessive force over the course of four years.  *Id.*  The court determined that:

> [t]he existence of citizen complaints, in and of itself, does not establish a pattern or practice of deliberate indifference in the use of excessive force among the City's arresting officers. . . . Here the fact that the City sustained 16% of the citizen complaints (i.e., an average of one sustained complaint per year over a five-year period), does not establish that the City adopted a policy of failing to

train police officers, and that this policy was the "moving force" behind Officer Lopez's alleged use of excessive force.

*Id.*

A plaintiff can also demonstrate liability under Section 1983 against a city by showing that the governmental agency failed properly to train and supervise its employees. *Cunningham*, 2003 WL 23471541 at *15. Liability under this theory will exist only if plaintiffs "can prove that the [governmental agencies'] failure to train evidences deliberate indifference to the rights of its inhabitants such that the failure to train in effect constitutes a governmental custom or policy within the *Monell* framework." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), *abrogated in part on other grounds as stated in Tokar v. Armontrout*, 97 F.3d 1078, 1083 n.6 (8th Cir. 1996)). The standard of "deliberate indifference" is a stringent one and requires proof that the defendants "disregarded a known or obvious consequence" of their actions. *Cunningham*, 2003 WL 23471541 at *15 (citing *Brown*, 520 U.S. at 410). Plaintiffs must show that the governmental entity was aware of the unconstitutional acts of its employees and failed to respond. *Cunningham*, 2003 WL 23471541 at *15 (citing *City of Canton*, 489 U.S. at 390-91). As the U.S. Supreme Court explained in *City of Canton*:

> . . . it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

489 U.S. at 390, 109 S.Ct. at 1205.

In this action Plaintiff has not established a failure to train on behalf of the City. The

evidence presented by the City indicates that it adequately trained both Officers Buttry and Campbell regarding search and seizure and the improper use of force. *See Allen Aff.*; *Cooper Aff.*; *Eilders Aff.* The evidence indicates that both Officers Buttry and Campbell completed Police Academy training and annual update training every year since their academy training. *Allen Aff.*, ¶¶ 2-3. Further, the evidence indicates that the City has policies in place to prevent unauthorized searches and seizures, as well as the use of excessive force. *See Mathis Aff.*; *Cooper Aff.*; *Eilders Aff.*; [Court Doc. Nos. 44-1, 44-2]. The record also demonstrates that the policies include guidance on entering a dwelling without a warrant, as well as a description of citizens' Fourth Amendment rights. *See* [Court Doc. No. 44-2, p. 5]. Further, the City maintains a policy regarding the procedures for internal investigations of citizen complaints. [Court Doc. No. 46-1]. Plaintiff does not present evidence creating a genuine issue of material fact regarding the validity of these policies or the inadequacy of the City's training.

Plaintiff suggests that the number of citizen complaints against Officers Buttry and Campbell create a genuine issue of material fact that the City maintained a policy of failing to investigate or to discipline officers for the use of excessive force or other violations of policy. The record reveals that only one alleged violation of policy was sustained against either officer and that Officer Campbell was disciplined with a 28-day suspension from work. *See* [Court Doc. No. 57]. Although the record demonstrates a number of complaints against each officer, the evidence indicates that the City determined the other complaints to be either "exonerated," "unfounded," or "not sustained." *Id.* The Plaintiff does not provide any evidence beyond sheer speculation indicating that the investigations into the Defendants' behavior were a sham or were otherwise illegitimate. The mere fact of prior investigations into conduct does not, without more,

create a genuine issue of material fact regarding a City policy of deliberate indifference or that the City was the "moving force" behind the alleged unconstitutional violations. *See Carter*, 2007 WL 2746635 at *7. Plaintiff further contends that the City undertook only a cursory investigation into her deprivation of rights. However, a faulty investigation after the alleged incident does not establish that the City was the "moving force" behind a constitutional violation. *See e.g.*, *Woods v. City of Wellston*, No. 2:02cv762, 2005 WL 1406105, *12 (S.D. Ohio June 15, 2005) (citing *Tompkins v. Frost*, 655 F.Supp. 468, 472 (E.D. Mich. 1987)). For these reasons the City's motion for summary judgment regarding Plaintiff's Section 1983 claim will be

**GRANTED**.

### B. Entitlement to Damages under Section 1988

Plaintiff requests an award of damages under Section 1988. Section 1988 entitles prevailing parties to attorneys' fees in civil rights actions, including those brought pursuant to Section 1983. 42 U.S.C. § 1988(b); *Gregory*, 220 F.3d at 446-47. Section 1988 also creates federal standards governing the determination of damages in cases in which a plaintiff's civil rights have been violated. *See Tinch v. City of Dayton*, 77 F.3d 483, 1996 WL 77445, *1 (6th Cir. 1996). In the instant action, Plaintiff may be entitled to damages or attorneys' fees under Section 1988 if she can establish a violation of her constitutional rights pursuant to Section 1983 at trial.

### C. State Law Claims

Plaintiff brings claims for negligence, negligence per se, assault and battery, and intentional infliction of emotional distress against all the Defendants. She also asserts a claim of trespass against Defendants Buttry and Campbell, but admits that the City is entitled to summary judgment on her claim of trespass. [Court Doc. No. 52, p. 2].

1.      **Claims against the City**

Although not argued by either of the parties, several Sixth Circuit decisions, as well as district court decisions indicate that under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §§ 29-20-101 et seq. ("TGTLA"), Tennessee state courts retain exclusive jurisdiction over claims arising under the TGTLA.  Tennessee Code Annotated § 29-20-307 provides that "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter and shall hear and decide such suits without the intervention of a jury."  The TGTLA requires that all claims must be brought in "strict compliance" with the Act.  Tenn. Code Ann. § 29-20-201(c).  The Act provides that "[e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary."  Tenn. Code Ann. § 29-20-201(a).  The TGTLA removes immunity for negligent actions of employees unless such actions were related to discretionary functions or certain enumerated intentional torts.  Tenn. Code Ann. § 29-20-205.  *See Hisel v. City of Clarksville*, 2007 WL 700983, *14 (M.D. Tenn. Mar. 2, 2007) (noting that pursuant to the TGTLA, municipalities are "'generally subject to suit for civil claims sounding in negligence unless the negligence claims 'arise out' of the exceptions provided in Tenn. Code Ann. § 29-20-205'") (quoting *Rhodes v. City of Chattanooga*, No. 1:04cv045, 2005 WL 2647921, *8 (E.D. Tenn. Oct. 14, 2005)).

In *Beddingfield v. City of Pulaski, Tennessee* the district court declined to exercise jurisdiction over pendent state law claims of wrongful death and violation of the Tennessee Constitution "in the face of the limitations upon suability specified in Tenn. Code Ann. § 29-20-

307." 666 F.Supp. 1064, 1064-66 (M.D. Tenn.), *rev'd on other grounds*, 861 F.2d 968 (6th Cir. 1988). 28 U.S.C. § 1367(c) provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . . if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The Sixth Circuit has determined that "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." *Gregory*, 220 F.3d at 446.

In *Gregory*, the Sixth Circuit affirmed the magistrate judge's dismissal of the state law claims against a law enforcement officer acting in his official capacity. 220 F.3d at 446. Similarly, in *Maxwell v. Conn* the Sixth Circuit affirmed the district court's decision to dismiss the plaintiff's pendent state law claims against defendant sheriff department employees without prejudice based on the exclusivity provision in the TGTLA. 893 F.2d 1335, 1990 WL 2774 *3-4 (6th Cir. 1990). *See also, Millender v. Bowman*, 2004 WL 2238526 *3 (W.D. Tenn. Aug. 25, 2004); *Spurlock v. Whitney*, 971 F.Supp. 1166, 1185 (M.D. Tenn. 1997); *Timberlake v. Benton*, 786 F.Supp. 676, 696 (M.D. Tenn. 1992).

In some cases district courts have declined to adhere to the exclusive jurisdiction provision of the TGTLA due to federal jurisdiction existing on the basis of diversity of citizenship. *See e.g.*, *Metaljan v. Memphis-Shelby County Airport Authority*, 752 F.Supp. 834, 836-37 (W.D. Tenn. 1990). However, in the instant action, Plaintiff has not shown that this court's jurisdiction over the state law claims is based on diversity of citizenship. Because the TGTLA provides that exclusive jurisdiction for claims arising under the Act rest with Tennessee

state courts, this Court will **DISMISS WITHOUT PREJUDICE** the Plaintiff's state law claims against the City and Officers Buttry and Campbell in their official capacities.

### 2.     State Law Claims Against Officers Campbell and Buttry

Plaintiffs have also brought state law claims against the individual Defendants in their individual capacities.  As the district court noted in *Timberlake*, the TGTLA "addresses the liability of governmental entities only.  Its jurisdictional limitations do not apply to persons sued individually."  786 F.Supp. at 697.

### a.     Negligence and Negligence Per Se

The TGTLA provides that "[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter . . ."  Tenn. Code Ann. § 29-20-310(b).  The Act also provides that:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of the right of privacy, or civil rights; . . .

Tenn. Code Ann. § 29-20-205.  The grant of immunity for certain intentional torts applies only to the torts specifically enumerated in the statute.  *Limbaugh v. Coffee Medical Services*, 59 S.W.3d 73, 84 (Tenn. 2001).

Where the TGTLA specifically removes immunity of a governmental entity for certain negligent acts and omissions, courts have held that the governmental employee may not be sued individually for the same tort pursuant to Tenn. Code Ann. § 29-20-310(b).  *See Alexander v.*

*Newman*, 345 F.Supp.2d 876, 886 (W.D. Tenn. 2004) (dismissing negligence claims against officers sued in their individual capacities); *see also Erwin v. Rose*, 980 S.W.2d 203, 206 (Tenn. Ct. App. 1998). Because the TGTLA does not specifically grant immunity to the City for civil claims of negligence, this Court will **DISMISS** Plaintiff's claims against the individual Defendants for negligence and negligence per se pursuant to Tenn. Code Ann. § 29-20-310(b). This dismissal will be without prejudice, however, in case a Tennessee court determines that the City is immune from suit for the state claims of negligence and negligence per se against the individual Defendants pursuant to Tenn. Code Ann. § 29-20-310(c).

     **b.**     **Assault and Battery**

     The Court will **DISMISS** with prejudice Plaintiff's claims against the individual Defendants for assault and battery because Plaintiff has failed to allege facts indicating that either Officer Buttry or Officer Campbell assaulted or committed a battery on Plaintiff. Under Tennessee law a civil cause of action for assault is defined as "'any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person.'" *Vafaie v. Owens*, No. 92C-1642, 1996 WL 502133, *3 (Tenn. Ct. App. Sept. 6, 1996) (quoting *Huffman v. State*, 292 S.W.2d 738 (Tenn. 1956) (overruled on other grounds by *State v. Irvin*, 603 S.W.2d 121 (Tenn. Sup. Ct. 1980)); *see also*, *Lewis v. Metropolitan General Sessions Court for Nashville*, 949 S.W.2d 696, 703 (Tenn. Crim. App. 1996). A battery is defined as "a touching of the person [of an individual], or something intimately associated with, or attached to, his person, for an unlawful purpose." *Lewis*, 949 S.W.2d at 703 (quoting *Huffman*, 292 S.W.2d at 742). Because the individual Defendants at issue here did not actually touch or inflict physical injury on

Plaintiff in an unlawful manner, these claims will be **DISMISSED**.

###### c.     Intentional Infliction of Emotional Distress

The TGTLA removes immunity for negligent actions of employees unless such actions were related to discretionary functions or certain enumerated intentional torts, including infliction of mental anguish.  Tenn. Code Ann. § 29-20-205(1)-(2).  The Tennessee Supreme Court has determined the phrase "infliction of mental anguish" applies only to the intentional form of this tort.  *Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. Sup. Ct. 2005).  A city defendant does not retain immunity from claims for negligent infliction of emotional distress.  *Id.* at 831.  A city employee is immune from suit where the immunity of his employer has been removed by the TGTLA.  *See* Tenn. Code Ann. § 29-20-310(b); *Sallee*, 171 S.W.3d 822.

The TGTLA requires that the City is immune from suit for intentional infliction of emotional distress caused by an city employee acting within the scope of employment.  *See* Tenn. Code Ann. § 29-20-205.  However, Officers Campbell and Buttry are not immune from a claim of intentional infliction of emotional distress.

Tennessee law requires that a Plaintiff demonstrate the following elements in support of a claim for intentional infliction of emotional distress: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury."  *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. Sup. Ct. 1997).  Tennessee courts have further explained:

> In describing these elements, we have emphasized that it is not sufficient that a defendant "has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress."  A plaintiff must in addition show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as

atrocious, and utterly intolerable in a civilized community.

*Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. Sup. Ct. 2004) (quoting *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. Sup. Ct. 1999)) (other citation omitted).

Although it is arguable that Plaintiff has satisfied the first element of the tort of intentional infliction of emotional distress, the court concludes that she fails to create a genuine issue of material fact regarding the last two elements of the claim. The court cannot conclude, based on the record before it, that the conduct of Officers Buttry and Campbell was so outrageous as to go beyond the bounds of human decency in a civilized society. Although their conduct may not have been commendable, Plaintiff admits that they were in her home for about five minutes before she led them to her son's apartment. She further admits that neither officer intentionally touched her or physically harmed her. The evidence supports the fact that the officers believed that a drunken driver was residing in the home. In addition, Plaintiff has not demonstrated a question of fact regarding whether she suffered a serious mental injury. She admits that she only went to her pastor for psychological counseling and indicates that she suffered from insomnia and increased fear. However, the record does not reveal any course of psychological treatment for these issues or detail the precise prescription medications taken and with what frequency. Thus, the court concludes that Plaintiff's claim for intentional infliction of emotional distress against Defendants Buttry and Campbell in their individual capacities must be **DISMISSED** with prejudice.

### d.      Trespass

Plaintiff also brings a claim of trespass against Officers Buttry and Campbell. Tennessee courts define trespass as the unauthorized entry upon another's real property. *See Morrison v.*

*Smith*, 757 S.W.2d 678, 681 (Tenn. Ct. App. 1988). Plaintiff claims that she did not consent to a search of her home. However, the evidence indicates that although she did not consent to a search, she invited the officers into her home at one point to lead them through the house, out the back door, and down the deck stairs to the lower apartment. Therefore, the court concludes that Plaintiff has established a genuine issue of material fact regarding whether the officers trespassed on her property during the allegedly unlawful search. However, it appears that once the Plaintiff agreed to show them through the house to her son's apartment, the officers' entry into her home was authorized. Therefore, the court will **DENY** Officer Buttry and Officer Campbell's motion for summary judgment regarding the tort of trespass as it relates to the unauthorized search of Plaintiff's home.

### 3. Plaintiff's Claims Pursuant to the Tennessee Constitution

Neither party addresses Plaintiff's claims pursuant to Article 1 of the Tennessee Constitution. TENN. CONST. art. 1, §§ 7, 8, 13, 16, 32. However, these claims should be dismissed for several reasons. First, several of these sections of the Tennessee Constitutions relate to the humane treatment of prisoners, and as the parties agree that Plaintiff was never arrested, much less a prisoner, the court will also **DISMISS** these claims. *See* TENN. CONST., art 1, §§ 8, 13, 16, 32.

Plaintiff further alleges a violation of her rights under Article I, Section 7 of the Tennessee Constitution. TENN. CONST. art 1, § 7. The Tennessee Supreme Court has held that "[a]rticle I, [section] 7 is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. Sup. Ct. 1968). However, unlike Section 1983 which provides for a private right of action for violations of the

United States Constitution, Tennessee "has not recognized any such implied cause of action for damages based upon violations of the Tennessee Constitution." *Bowden Bldg. Corp. v. Tennessee Real Estate Com'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999); *see also, Lee v. Ladd*, 834 S.W.2d 323, 325 (Tenn. Ct. App. 1992) (noting that "[w]e have held, however, in prior cases that we know of no authority for the recovery of damages for a violation of the Tennessee Constitution by a state officer"); *Cline v. Rogers*, 87 F.3d 176, 179-80 (6th Cir. 1996). As there is no private right of action for damages based on alleged violations of the Tennessee Constitution, Plaintiff's state law constitutional claims seeking damages must be **DISMISSED**.

### D. Punitive Damages

Plaintiff concedes that she is not entitled to punitive damages from the City. Therefore, her claim for punitive damages against the City will be **DISMISSED**.

Section 1983 does not contain a provision for damages. However, punitive damages are available pursuant to Section 1983. *See Smith v. Wade*, 461 U.S. 30, 35-36, 103 S.Ct. 1625, 1629 (1983). Deterrence of future egregious conduct is a "primary purpose" of Section 1983, as well as of punitive damages. *Id.* at 49, 103 S.Ct. at 1636. In *Smith* the Supreme Court held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56, 103 S.Ct. at 1640. Punitive damages should only be awarded in the "most egregious cases." *White v. Burlington Northern & Santa Fe Railroad Co.*, 364 F.3d 789, 806 (6th Cir. 2004), *aff'd,* 548 U.S. 53 (2006). The court concludes that Plaintiff has not created a genuine issue of material fact regarding whether she is entitled to punitive damages for her Section 1983 claim relating to the

alleged unlawful search of her home. There is no evidence showing the evil motive or the reckless and callous indifference of Officers Buttry and Campbell. Therefore, the punitive damages claim under Section 1983 will be **DISMISSED**.

Tennessee law also allows for punitive damages. The Tennessee Supreme Court outlined the parameters for punitive damages in *Hodges v. S.C. Toof & Co.*:

> In Tennessee, therefore, a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly.
>
> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.
>
> Further, because punitive damages are to be awarded only in the most egregious of cases, a plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence.

833 S.W.2d 896, 901 (Tenn. Sup. Ct. 1992). The court concludes that Plaintiff's evidence of trespassing by Defendants does not warrant punitive damages under Tennessee law. Even taking the facts in the light most favorable to the Plaintiff, it does not appear that the record creates a genuine issue of material fact regarding whether the Defendants acted intentionally, fraudulently, maliciously, or recklessly. Therefore, Plaintiff's punitive damages claim against Officers Buttry and Campbell under Tennessee law will also be **DISMISSED**.

## IV.  Conclusion

As outlined *supra*, the Defendant's motion for summary judgment will be **GRANTED in part** and **DENIED in part**.  As the Plaintiff admits that her claims pursuant to 42 U.S.C. § 1985, 42 U.S.C. § 1981, Title VII, and for violation of the Eighth Amendment to the U.S. Constitution should be dismissed, the court will **DISMISS** these claims.  The court will also **DISMISS** Plaintiff's claims for trespass and punitive damages against the City, as well as her claims for alleged violations of the Tennessee Constitution against all Defendants.

Defendants' motion for summary judgment will be **GRANTED** with respect to Plaintiff's Section 1983 claims against the City and against Officers Buttry and Campbell in their official capacities.  The City's motion for summary judgment on Plaintiff's state law claims will also be **GRANTED**.

The motion for summary judgment with respect to Plaintiff's claims of unlawful seizure in violation of Plaintiff's Fourth Amendment rights against Officers Buttry and Campbell will be **GRANTED**.  The motion for summary judgment with respect to Plaintiff's Section 1983 unlawful search claims against Officers Buttry and Campbell will be **DENIED**.  The motion for summary judgment pertaining to the state law claims of negligence, negligence per se, assault and battery, and intentional infliction of emotional distress against Officers Buttry and Campbell will be **GRANTED**.  The motion for summary judgment pertaining to the claim of trespass against Officers Buttry and Campbell will be **DENIED**.

Plaintiff's Section 1983 claims against the City and Officers Campbell and Buttry in their official capacities will be **DISMISSED** with prejudice.  Plaintiff's state law claims against the City will be **DISMISSED** without prejudice.  Plaintiff's unlawful seizure claims against Officers

Buttry and Campbell will be **DISMISSED** with prejudice.  Plaintiff's state law claims of negligence and negligence per se against Officers Buttry and Campbell will be **DISMISSED** without prejudice.  Plaintiff's state law claims of intentional infliction of emotional distress and assault and battery against Officers Buttry and Campbell in their individual capacities will be **DISMISSED** with prejudice.  Plaintiff's claims of punitive damages under both federal and state law against all Defendants will be **DISMISSED** with prejudice.

To summarize, the parties should be prepared to proceed to trial on Plaintiff's claims of unlawful search in violation of the Fourth Amendment against Officers Buttry and Campbell in their individual capacities and Plaintiff's state law claims of trespass against Officers Buttry and Campbell in their individual capacities.

A separate order will enter.


_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE